ERNEST A. ASHER, B. H. Asher, and William Asher, Appellants,
v. N. CHRIST JENSEN, Respondent.

(175 N. W. 365.)

**Vendor and purchaser — concealment and misrepresentation — rescission of
contract — where an examination is made and conditions known caveat
emptor applies.**

In a purchaser's action to rescind a contract for the sale of land upon the
ground of fraudulent concealment and misrepresentation by the vendor, where
it appears that the purchaser had full opportunity to and did personally
examine the land involved, and the record discloses no concealment and no
positive misrepresentations of fact, it is *held* that the rule of *caveat emptor*
applies.

Opinion filed October 10, 1919.

Appeal from District Court of Stark County, *Crawford,* J.

Judgment affirmed.

*C. H. Starke,* for appellants.

"If there be in any way whatever misrepresentation or concealment,
a court of equity will not compel him to complete the purchase; but
where the conveyance has been executed, I apprehend that a court of
equity will set aside the conveyance only on the ground of actual fraud."
Wild v. Gibson, 1 H. L. Cas. 605, 1 Clark & F. 505; Decker v.
Schultz (Wash.) 27 L.R.A. 335.

Courts do not permit the cheat and the sharper to take refuge behind
the credulity of his victim. 20 Cyc. 32, b, 45, 49, 62.

The rule of *caveat emptor* is not founded upon the highest standard
or morals, and it is no longer a shield and protection to the deliberate
frauds and cheats of sharpers. Strand v. Griffith, 38 C. C. A. 444;
Shumaker v. Mather (N. Y.) 30 N. E. 755; Fargo Gaslight & Coke
Co. v. Fargo Gas & E. Co. 2 N. D. 219, 37 L.R.A. 593 (Syl.).

Ordinarily one who buys property has a right implicitly to rely up-
on the representations of the seller; and if they were false and made

NOTE.—On right to rely upon representations made to effect contract as a basis
for a charge of fraud, see note in 37 L.R.A. 593.

with intent to deceive the purchaser, the seller will not be allowed to urge that the buyer by investigation could have discovered their falsity. 13 C. J. 392, § 301; Wilson v. Robinson, 155 Pac. 732; Griffith v. Gifford (Wash.) 165 Pac. 874; Chisum v. Huggins (Okla.) 154 Pac. 1146; Bunting v. Crehlon (N. D.) 168 N. W. 727.

J. P. Cain, for respondent.

"A court of equity will not undertake any more than a court of law to relieve a party from the consequence and carelessness, where the means of knowledge are at hand and equally available to both parties, and the subject of the purchase is alike open to their inspection." Slaughter v. Gerson, 13 Wall. 379, 20 L. ed. 627; Hulett v. Achey, 39 Wash. 91; Washington Cent. Improv. Co. v. Newlens, 39 Pac. 366; West Seattle Land & Improv. Co. v. Herren, 16 Wash. 665, 48 Pac. 341; Griffith v. Strand, 19 Wash. 686; Walsh v. Bushell, 26 Wash. 576; Sampson v. Beale, 27 Wash. 557; Sherman v. Sweeny, 29 Wash. 321; Pigott v. Graham, 93 Pac. 435.

Where the means of information are accessible or are availed of, and a personal examination is made by a purchaser of property before purchasing, he will not be permitted thereafter to say that he was induced to purchase on the statements and representations of the vendor which related to matters discoverable upon ordinary inspection. Girder v. Clopton, 27 Ark. 244; Tuck v. Downing, 76 Ill. 71; Southern Development Co. v. Selvia, 125 U. S. 247, 31 L. ed. 678; Williamson v. Holt, 147 N. C. 515; Graffenstein v. Epstein, 23 Kan. 443.

"In the sale of property, especially real estate, which may be seen of all men, the law imposes a duty upon the vendee as well as the vendor, and it refuses assistance to those who have it abundantly in their hands to take care of themselves, everyone *sui juris,* capable of contracting and being contracted with, is his own guardian." 2 Kent, Com. p. 486.

Every person reposes at his peril in the opinion of others when he has equal opportunity to form and exercise his own judgment. *Simplex commendatio non obligat.* Harrison v. Walter, 89 Mo. App. 164; Younger v. Hogue, 211 Mo. 444; Cornwall v. McFarland Real Estate Co. 150 Mo. 377; Irving v. Thompson, 18 Me. 418; Woodruff v. Garner, 27 Ind. 4; Van Velsor v. Seeberger, 25 Ill. App. 598; Stone v. Moore, 75 Ga. 565; Moore v. Turveville, 5 Am. Dec. 562;

Wright v. Gully, 28 Ind. 475; Long v. Warren, 68 N. Y. 426; Brown v. Bledsoe, 1 Idaho, 746; Rockafellow v. Baker, 41 Pa. 319; Shephard v. Goben, 142 Ind. 318; Pratt v. Philbrook, 33 Me. 17; Short v. Pierce, 11 Utah, 29; Andrus v. St. Louis Smelting & Ref. Co. 130 U. S. 643, 32 L. ed. 1054; Reynolds v. Palmer, 21 Fed. 433; White v. Walker, 6 Fla. 478; First Nat. Bank v. Swan, 3 Wyo. 356; Callum v. Branch Bank, 4 Ala. 21; Ramsey v. Wallace, 100 N. S. 75; Lake v. Tyree, 90 Va. 719; Farrel v. Lovett, 68 Me. 326; Fields v. Rouse, 3 Jones, L. 72; Gordon v. Parmalee, 2 Allen, 212; Calahan v. Mc-Kinley, 52 Iowa, 222; Parker v. Moulton, 114 Mass. 99.

BIRDZELL, J.   This is an appeal from a judgment of dismissal in a purchaser's action to rescind a contract for the purchase of a half section of land in Montana.   The alleged grounds of relief are fraudulent concealment and misrepresentations made by the vendor.   The plaintiff Burl Asher and the defendant had been acquainted for some time prior to the making of the contract, both living in Dickinson.   In the spring of 1917, while on an automobile trip through the southwestern part of this state, these parties discussed prospectively the sale and purchase of the land in question.   In September of the same year William Asher, of Livingston, Montana, a brother of Burl Asher, came to Dickinson, and the two, together with Jensen, the defendant, went by automobile to Culbertson, Montana, to look over the land with a view to its purchase, arriving there on the evening of September 4th.   On the following day the three went to look over the land.   The farm was occupied by a tenant by the name of Krueger, who had lived there about five years.   It appears that prior to their arrival at the farm Jensen had warned the Ashers with respect to any statements the Kruegers might make concerning the farm, as they would be interested in any proposition looking toward the termination of their tenancy.   The parties spent considerable time looking over the land on the first day, and spent the night with a relative of the defendant a few miles distant, returning for further inspection the following day.   The Ashers had been raised upon a farm in Indiana and desired to purchase this land to enable another brother, Ernest Asher, to secure a larger farm than he was then occupying in Indiana.   A contract was entered into, dated September 7th, whereby the Ashers agreed to purchase the land in

question for $6,000, $2,000 to be cash and $4,000 on the 1st of January, 1918. Some town lots in Billings, Montana, were accepted as part of the purchase price. In the spring of 1918, Ernest Asher came out from Indiana with his family, taking up his residence on the land. He soon complained that the land was full of gravel and that the well went dry, whereupon William Asher again went to Culbertson and looked at the land. In May, William requested a rescission of the contract, demanding a return of the money payment and of the lots given in exchange. The alleged fraudulent representations relate to the quantity of water that the well would supply and to the character of the subsoil.

There is a sharp conflict in the testimony with reference to what statements were made concerning the well, the Ashers contending that the defendant stated that there were 40 feet of water in the well; that there was good water on the place and plenty of it; that the well gives plenty of water. Jensen denies, however, that he made any representation concerning the capacity of the well, but that he did state its depth and that the water was good water. It appears that when the parties first arrived on the farm they went to the well and observed that the tank was full of water. Mrs. Krueger, however, who testifies by deposition, states that it had been filled that morning with water hauled from a coulee near by. There is nothing to indicate that Jensen knew that the water in the tank had been hauled from the coulee, and the testimony throughout on the question of the quantity of water clearly indicates that the well was capable of supplying water enough to fill the tank, so that the condition observed that morning cannot be said to amount to a fraudulent concealment of fact on the part of Jensen. Even though the testimony of the plaintiff as to what the defendant said concerning the well be true, it would only establish that the defendant had used a relative term in describing the capacity of the well, and the testimony as a whole does not show that the statement was so extravagant in its application to the well in question as to amount to fraud. The well was useful and had been used for a number of years. It had supplied water enough that the tenant Krueger felt justified in demanding of Jensen that he construct a windmill, which request was heeded by Jensen. The record as a whole leaves the impression that the well was capable of supplying the ordinary needs upon a farm of this character, and that, while it gave out occasionally, the supply would

be replenished within a comparatively short time. We are satisfied that no positive misrepresentation of fact concerning the well was made and no fraud practised concerning the same. A rescission of the contract is not warranted on this ground.

As to the representations concerning the subsoil, it must first be observed that the parties had ample opportunity to make a complete examination of the land; that they were upon the land and in its vicinity for two days, and that no artifice was resorted to to prevent them from satisfying themselves fully as to the character of the land that they were purchasing. They went about the land and observed a rocky knoll, and they could not have failed at the same time to observe the appearance of the surface. The witnesses for the plaintiff even testify that gravel was apparent upon the surface in a number of places. In the light of what a casual examination would show, the testimony as to Jensen having filled up a gravel pit by hauling in dirt is of no consequence, because it would conceal no condition that was not otherwise plainly apparent. Burl Asher testifies that Jensen did not try to prevent him from going to any part of the land that he wanted to see, and William Asher says that the gravel is easy to be seen; that a man walking over the fields that were sown to grain would be apt to see it; Mrs. Krueger's testimony being to the same effect. We find no evidence of any fraud or concealment or of any attempt upon the part of the defendant to prevent the plaintiffs from using their powers of observation, and it must be borne in mind that the plaintiffs, who had been raised upon a farm, were presumably capable of satisfying themselves as to what they were purchasing. The parties were, therefore, dealing upon equal footing.

The record as a whole rather impresses us that the attempt to rescind the contract springs from the disappointment of Ernest Asher, who was perhaps too prone to compare the cheaper land upon which he located with the more expensive and productive land which he had abandoned in Indiana. The contract cannot be rescinded for mere disappointment experienced by one of the parties. Upon the record before us the rule of *caveat emptor* applies. If this contract could be rescinded on the record before us, it is difficult to conceive of a land sale resulting in disappointment to one of the parties that could not likewise be rescind-

ed. For the foregoing reasons, the judgment appealed from is in all things affirmed.

GRACE, J. I concur in the result.